UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| LOVIE CARNEY, ) | | |
|                 Plaintiff, ) | | |
| vs. ) | No. 4:07-cv-0032-DFH-WGH | |
| ) | | |
| CAESAR'S RIVERBOAT CASINO, LLC, ) | | |
| ) | | |
|                 Defendant. ) | | |
| KAREN CARNEY, ) | | |
|                 Plaintiff, ) | | |
| vs. ) | No. 4:07-cv-0145-DFH-WGH | |
| ) | | |
| CAESAR'S RIVERBOAT CASINO, LLC, ) | | |
| ) | | |
|                 Defendant. ) | | |

**Entry on Motion for Summary Judgment**

These actions are before the court on the defendant's unopposed motion for summary judgment. The actions are resolved through this single Entry because they were consolidated for discovery and motions practice (dkt 19). For the reasons explained in this Entry, the motion for summary judgment must in each case be **granted.** The final pretrial conference and the trial date are also **vacated.**

**Parties, Claims and Procedural Posture**

In No. 4:07-cv-0032, the plaintiff is Lovie Carney. In 4:07-CV-00145, the plaintiff is Karen Carney, Lovie Carney's daughter. The common defendant in each case is Caesar's Riverboat Casino, LLC. The Carneys present claims under both federal and state law, alleging that Caesar's (1) violated their right to freedom of contract under 42 U.S.C. § 1981, (2) violated the public accommodation provisions of 42 U.S.C. § 2000a, (3) violated the retaliation provisions of 42 U.S.C. § 2000a-2, (4) committed the tort of intentional infliction of emotional distress, and (5) committed the tort of negligent infliction of emotional distress.

Caesar's seeks summary judgment on all claims. Caesar's has filed a single motion for both cases. The Carneys have not responded to that motion.

## Summary Judgment Standard

Summary judgment is warranted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A fact is material if it might affect the outcome of the suit under the governing law, and a dispute about a material fact is genuine only if the evidence would allow a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the initial burden of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986) (quoting then-current text of Rule 56(c)). "When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party." FED. R. CIV. P. 56(e)(2). "The nonmovant will successfully oppose summary judgment only when it presents definite, competent evidence to rebut the motion." *Vukadinovich v. Board of School Trustees,* 278 F.3d 693, 699 (7th Cir. 2002) (internal quotation and citation omitted).

The Carneys' failure to oppose Caesar's motion for summary judgment means that the Carneys have admitted the truth of Caesar's statement of material facts for purposes of the court acting on its motion for summary judgment. See *Johnson v. Gudmundsson,* 35 F.3d 1104, 1108 (7th Cir. 1994). This does not alter the standard for assessing a Rule 56(c) motion, but it does "reduc[e] the pool" from which the facts and inferences relative to such a motion may be drawn. *Smith v. Severn,* 129 F.3d 419, 426 (7th Cir. 1997).

## Undisputed Facts

The following statement of facts is not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light reasonably most favorable to the Carneys as the non-moving parties. See *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 150 (2000). For reasons of clarity only, the plaintiffs are referred to by their first names when necessary.

Caesar's is a riverboat casino on the Ohio River in Southern Indiana. On December 28, 2006, Lovie Carney and her daughter Karen Carney arrived at Caesar's between 8:00 and 9:00 p.m. Upon arrival, Karen pushed Lovie's wheelchair to a group of slot machines located along the wall. Lovie began playing two slot machines simultaneously. Karen then left the area to play another slot machine.

Some time after midnight, one of Lovie's slot machines became jammed when she

attempted to place a five-dollar bill in the machine. A Caesar's employee responded and corrected the malfunction. To access the slot machine, the Caesar's employee helped Lovie move out of her wheelchair and into a chair next to the slot machine. Lovie's wheelchair remained in front of the other slot machine with her coat, purse and cane on it. After fixing the machine, the employee informed Lovie that someone else from Caesar's would have to replace the five-dollar bill because she lacked authority to handle cash.

A short time later, Lovie alleges, a white woman reached over her wheelchair and inserted money into one of the slot machines that Lovie was playing. Lovie told the woman that she was still playing the machine and an argument ensued. The unidentified woman called Lovie derogatory names and harassed her on several occasions following the initial incident. At some point during this time, Karen Carney returned to the area where Lovie was playing. The other woman came back and forth to Lovie's slot machines on two to three occasions to harass Lovie. Karen approached the woman and asked her to leave Lovie alone. Karen acknowledges that Lovie was "talking back" to the woman. Lovie acknowledges that she may have used profanity during the exchanges with the woman.

Following the initial confrontation with the unidentified woman, Lovie and Karen continued to play the slot machines for approximately one hour. During this time, Lovie saw the woman speaking with personnel from Caesar's. Shortly thereafter, Caesar's security workers, including Elizabeth Short and Hugh Rhoades, approached Lovie and Karen. Short informed Lovie that the woman advised security that Lovie was harassing her. Short asked Lovie what had happened and Lovie explained her version of events. According to Karen, at some point during the conversation, Hugh Rhoades stated: "Didn't your momma teach you to ignore these types of things?" The Carneys also allege that Rhoades stated: "You people are always causing trouble." In any case, Short informed the Carneys that they would have to leave because they had caused a disturbance. According to Lovie, security personnel informed her that the other woman involved in the incident did not have to leave because she was a guest. Rhoades then escorted Lovie and Karen out of the casino area.

Both Karen and Lovie Carney have visited the casino on numerous occasions over the years. Lovie indicated that she visited the casino approximately one to two times per week dating back to the casino's opening. Over this period of several years, neither Lovie nor Karen ever had any previous problems with casino employees. Both Karen and Lovie acknowledged that they do not have any evidence supporting their allegations that Caesar's engaged in a pattern or practice of discrimination.

No Caesar's employees made any direct references to the Carneys' race. The closest reference was Rhoades' ambiguous "you people" comment. None of the Caesar's employees made any physical contact with either of the Carneys during the process.

Rhoades made the decision to eject the Carneys from the casino. That decision was not based on any intent to engage in racial discrimination, but on their disruptive behavior and their refusal to stop using profanity after being requested to do so. The Carneys' behavior was causing a disturbance and jeopardizing the safety and/or comfort

of the casino employees and patrons. The Carneys have not come forward with evidence to contradict Caesar's evidence on this point.

### Federal Claims

*42 U.S.C. § 1981.* The Carneys' first federal claim is under 42 U.S.C. § 1981, which gives non-whites the same rights to make and enforce contracts that whites have. Section 1981 is "a broad-based prohibition (and federal remedy) against racial discrimination in the making and enforcing of contracts." *Humphries v. CBOCS West, Inc.,* 474 F.3d 387, 393 (7th Cir. 2007), aff'd, 128 S. Ct. 1951 (2008). It provides, in pertinent part: "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens . . . ." 42 U.S.C. § 1981(a). The statute defines making and enforcing contracts to mean "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). While § 1981 claims are most often brought in connection with the right to contract for employment, plaintiffs can also use the statute to enforce their rights to enter into retail contracts. See *Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751, 756 (7th Cir. 2006); *Morris v. Office Max, Inc.,* 89 F.3d 411, 413 (7th Cir. 1996). Such a claim has been filed in a neighboring district under circumstances similar to those alleged by the Carneys. *Williams v. Southern Illinois Riverboat/Casino Cruises,* 2008 WL 1776461 (S.D. Ill. April 16, 2008). The court wrote:

> To prevail on a § 1981 claim a plaintiff must prove: (1) she is a member of a racial minority; (2) the defendant intended to discriminate on the basis of race; and (3) the discrimination concerned at least one of the activities enumerated in the statute, such as making a contract. *Morris,* 89 F.3d at 413; see *Pourghoraishi,* 449 F.3d at 756. Purposeful discrimination is an essential part of the claim. *General Bldg. Contractors Ass'n v. Pennsylvania,* 458 U.S. 375, 391 (1982); *Majeske v. Fraternal Order of Police, Local Lodge No. 7*, 94 F.3d 307, 312 (7th Cir. 1996).

*Id.* at *6. The first and third elements are not in dispute at this time. The issue is the second element: whether the Carneys can show that Caesar's intentionally discriminated against them because of their race.

To show intentional discrimination under 42 U.S.C. § 1981 when there is no direct evidence of such discrimination, the Carneys rely on a modification of the burden-shifting analytical framework of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). Through this modification, and as applicable here, the Carneys bear the burden of proving a *prima facie* case of discrimination by a preponderance of the evidence. If this is done, the burden of production shifts to Caesar's to articulate, though not necessarily to prove, a legitimate, nondiscriminatory reason for the challenged action. *Williams v. Southern Illinois Riverboat/Casino Cruises,* 2008 WL 1776461, at *6. "If defendants articulate a proper basis for their conduct, the burden shifts back to plaintiffs in the third stage of the analysis to prove that defendants' proffered reasons were simply a pretext for discrimination." *Id.*, citing *McDonnell Douglas,* 411 U.S. at 804-05. "In the context of the denial of the right to

make or enforce a retail contract, the appropriate parallel *prima facie* case is that (1) the plaintiff is of a racial minority, (2) he attempted to make or enforce a contract, (3) the defendant denied him the right to make or enforce the contract and (4) the defendant treated the plaintiff less favorably than other white people who were similarly situated." *Id.*

The contract in the Carneys' § 1981 claims is Caesar's business operation as a casino and the invitation to the public to enjoy its gambling and other services. The Carneys attempted to use those services during the occasion of their visit to Caesar's described above. Caesar's ejected the Carneys from its premises.[1] There is no evidence, however, that Caesar's treated the Carneys less favorably than similarly situated white patrons. On the contrary, the undisputed evidence is that the Carneys' race was not the reason for their ejection. The last element of a *prima facie* case is therefore absent here, and the absence of a *prima facie* case is fatal to the claim under 42 U.S.C. § 1981 using the indirect method of proof. *Hong v. Children's Memorial Hosp.,* 993 F.2d 1257, 1261 (7th Cir. 1993) ("Without a *prima facie* case, the plaintiff cannot withstand summary judgment."), citing *Gilty v. Village of Oak Park,* 919 F.2d 1247, 1250 (7th Cir. 1990).

Even if the court concluded otherwise with respect to the existence of a *prima facie* case here, Caesar's Office has offered evidence that the decision to eject the Carneys was based on a legitimate, non-discriminatory reason: their disruptive behavior and the threat it posed to Caesar's staff and patrons. The Carneys have not argued or shown that this reason was a pretext for a discriminatory intent. See *Jordan v. Summers,* 205 F.3d 337, 343 (7th Cir. 2000) (to show pretext, plaintiff must present evidence that each of the proffered reasons is either a lie or completely lacking a factual basis).

*42 U.S.C. § 2000a.* Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a *et seq.,* guarantees equal access to places of public accommodation. It provides:

> All persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation . . . without discrimination or segregation on the ground of race . . . .

42 U.S.C. § 2000a. Again, without direct evidence of discrimination or segregation on the ground of race, the Carneys' burden to withstand Caesar's motion for summary judgment is to produce a *prima facie* case. This would consist of evidence showing that (1) they are members of a protected class, (2) they were not allowed to enjoy a place of public accommodation, and (3) others outside their protected class were allowed to enjoy that place. See *Hornick v. Hoyes,* 708 F.2d 321, 325 n.8 (7th Cir.1983). The third element is absent here and in fact is negated by Rhoades' unchallenged account of the reasons the Carneys were ejected from the casino. The Carneys' claim of a violation of § 2000a does

---

[1] Although the majority of the acrimonious interaction involved Lovie Carney, both Lovie and Karen were ejected by Caesar's, and for the purpose of addressing their federal claims this was the pivotal moment. The legal claims of Lovie and Karen therefore become identical in this case.

not rest on anything beyond their mere allegation.  The allegation, unsupported by evidence, is not sufficient to bring a claim to trial.  *Lizardo v. Denny's, Inc.,* 270 F.3d 94, 104 (2d Cir. 2001) ("a jury cannot infer discrimination from thin air.  Plaintiffs have done little more than cite to their mistreatment and ask the court to conclude that it must have been related to their race. This is not sufficient.") (internal citation omitted).

*42 U.S.C. § 2000a-2*.  The Carneys' third federal claim is that Caesar's unlawfully retaliated against them for opposing racially discriminatory business practices in violation of 42 U.S.C. § 2000a-2.

To establish a retaliation claim, the Carneys must show that they were engaged in an activity protected under anti-discrimination statutes, that Caesar's was aware of their participation in the protected activity, that Caesar's took adverse action against them based upon their activity, and that a causal connection existed between the Carneys' protected activity and the adverse action.  *Lizardo,* 270 F.3d at 105.

The court assumes that action taken to oppose racially discriminatory business practices in violation of 42 U.S.C. § 2000a is protected under anti-discrimination statutes. However, the Carneys admitted in discovery that they knew of no evidence that would support a conclusion that Caesar's engaged in any pattern or practice of discrimination. The Carneys were ejected from the casino not in conjunction with any performance of protected activity on their part but because of their unacceptable behavior.  A similar situation was considered in *Lizardo,* 270 F.3d at 106, where a claim of retaliation failed because the plaintiffs had been ejected from a restaurant in response to a confrontation involving them, not in response to any complaints about discrimination or the exercise of any protected activity.  These circumstances undermine the Carneys' third federal claim. "If the nonmoving party fails to establish the existence of an element essential to his case, one on which he would bear the burden of proof at trial, summary judgment must be granted to the moving party."  *Ortiz v. John O. Butler Co.,* 94 F.3d 1121, 1124 (7th Cir. 1996).

### Supplemental State Law Claims

The foregoing resolves the Carneys' federal claims in advance of trial. The Carneys include claims under Indiana law that Caesar's committed the torts of intentional infliction of emotional distress and negligent infliction of emotional distress.  This court has supplemental jurisdiction over these state law claims under 28 U.S.C. § 1367(a).  When a district court dismisses the claims over which it had original jurisdiction, it has discretion either to retain jurisdiction over the supplemental claims or to dismiss them. 28 U.S.C. § 1367(c)(3); *Kennedy v. Schoenberg, Fisher & Newman, Ltd.,* 140 F.3d 716, 717 (7th Cir. 1998).

The general rule under these circumstances is to dismiss the supplemental state law claims. *Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343, 350 n.7 (1988) ("in the usual case in which all federal law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining

state-law claims"), citing *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966). In this case, however, the exercise of supplemental jurisdiction over the state law claims is proper. See *Miller Aviation v. Milwaukee County Bd. of Supervisors,* 273 F.3d 722, 731 (7th Cir. 2001) ("when the district court, in deciding a federal claim, decides an issue dispositive of a pendant claim there is no use leaving the latter to the state court"); *Van Harken v. City of Chicago,* 103 F.3d 1346, 1354 (7th Cir. 1997) (where "an interpretation of state law that knocks out the plaintiff's state claim is obviously correct, the federal judge should put the plaintiff out of his misery then and there, rather than burdening the state courts with a frivolous case").

*Intentional Infliction of Emotional Distress.* The Carneys seek recovery for intentional infliction of emotional distress. "[O]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress." *Powdertech, Inc. v. Joganic,* 776 N.E.2d 1251, 1264 (Ind. App. 2002). Conduct is considered extreme and outrageous "only when the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civil community." *Id.* (reversing denial of summary judgment where defendant had fired plaintiff from his job after he engaged in a fight with another employee). In appropriate cases, what constitutes extreme and outrageous conduct giving rise to a cause of action for intentional infliction of emotional distress may be decided as a matter of law. *Branham v. Celadon Trucking Services, Inc.,* 744 N.E.2d 514, 523 (Ind. App. 2001).

"To avoid summary judgment on this claim, plaintiff must offer evidence that the defendant (1) engaged in extreme and outrageous conduct (2) intentionally or recklessly, which (3) caused (4) severe emotional distress to plaintiff." *Aronson v. Health Care Excel, Inc.,* 2007 WL 3091579, *10 (S.D. Ind. 2007), citing *Bradley v. Hall,* 720 N.E.2d 747, 752 (Ind. App. 1999). The act of ejecting the Carneys from the casino because of their unruly and disruptive behavior does not constitute extreme and outrageous conduct under Indiana law. The same is true of the manner in which the Carneys were ejected from the casino. Neither constituted conduct so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civil community. Caesar's is entitled to summary judgment on the Carneys' claims for intentional infliction of emotional distress.

*Negligent Infliction of Emotional Distress.* The Carneys seek recovery for the negligent infliction of emotional distress. Indiana recognizes such a tort, but requires to support such a claim that a plaintiff demonstrate that he or she suffered a direct physical impact. *Powdertech, Inc. v. Joganic,* 776 N.E.2d 1251, 1262 (Ind. App. 2002). The direct impact sustained by the plaintiff must necessarily be a "physical" impact. *Id.*

In the present case, the undisputed facts show that neither Rhoades nor any other Caesar's employee touched the Carneys in any way as they were ejected from the casino. There was no other feature of the events that could provide the required physical impact. Caesar's is entitled to summary judgment on the claims for negligent infliction of emotional distress.

## Conclusion

"'It is a well-settled rule that a party opposing a summary judgment motion must inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered.'"  *Sanders v. Village of Dixmoor,* 178 F.3d 869, 870 (7th Cir. 1999), quoting *Liberles v. County of Cook,* 709 F.2d 1122, 1126 (7th Cir. 1983).  As explained above, the Carneys have not come forward with any direct evidence of racial or retaliatory bias on the part of Caesar's.  They also have not come forward with evidence that establishes a *prima facie* case as to their federal claims.  Even if they had, they have not offered evidence that Caesar's' proffered reason for its action was pretextual.  The state law claims lack merit as well.  Accordingly, Caesar's motion for summary judgment must be **granted.**  Judgment consistent with this Entry shall now issue.  As noted, the final pretrial conference and the trial setting are each **vacated.**

So ordered.

*David F. Hamilton*

DAVID F. HAMILTON, Chief Judge
United States District Court

Date:   2/11/09